1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| STEVEN L. MAXWELL | ) | 1:11-cv-01509 SMS |
| | ) | |
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| | ) | **SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Steven L. Maxwell[1] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his applications for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sandra M. Snyder, United States Magistrate Judge.[2]

---

[1]The application records Plaintiff's name as "Stephen Lee Maxwell."  AR 147.

[2]The parties consented to the jurisdiction of a United States Magistrate Judge.  (*See* Docs. 8 & 10.)

## FACTS AND PRIOR PROCEEDINGS[3]

In August 2007, Plaintiff filed applications for benefits, alleging disability beginning June 4, 2007.  *See* AR 147-156.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 89-100, 103-104.  ALJ Christopher Larsen held a hearing and issued an order denying benefits on December 10, 2009, finding Plaintiff was not disabled.  AR 22-27.  Thereafter, on July 8, 2011, the Appeals Council denied review.  AR 1-3.

**Hearing Testimony**

ALJ Larsen held a hearing on October 29, 2009, in Fresno, California.  Plaintiff appeared and testified.  He was represented by attorney Michael Goldberg, on behalf of attorney Ronald D. Miller.  Vocational Expert ("VE") Jose Chaparro also testified.  AR 39-59.

Plaintiff was thirty-four years old on the date of the hearing.  AR 43.  He completed high school and last worked at a car wash before becoming ill.  AR 43.

Between 1997 and 2007, Plaintiff worked at various car wash businesses.  AR 43-44.  In addition to washing cars, he also performed sales and detailing, "pretty much everything that goes with the car wash."  AR 46.  Within the past fifteen years, Plaintiff has also worked as a weatherization specialist for Renaissance Construction.  AR 44.  More particularly, that job involved light construction work weatherproofing homes.  He used small power tools and lifted about ten pounds regularly.  Occasionally he lifted air conditioning units.  AR 45; *see also* AR 56.

Plaintiff last worked on June 4, 2007.  AR 43.  He has been diagnosed with ulcerative colitis.  The condition involves uncontrollable diarrhea.  He has ten to fifteen bowel movements a day, and about twice a week, on average, he does not make it to the bathroom in time.  AR 47; *see also* AR 53-54.  Plaintiff wears a diaper if he is leaving the house.  AR 47-48.  He experiences severe abdominal pain upon waking, after he eats and in the evening.  The cramping episodes occur three to four times per day and last from thirty minutes to two hours.  AR 48-49.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

He experiences the severe abdominal cramping every day.  AR 53.  Even when he is not

suffering from an abdominal cramping episode, Plaintiff is fatigued and thus lies down about

twenty-two hours a day.  AR 49-50, 53 ("pretty much bedridden all the time").  Additionally,

when he has "a really bad attack" of abdominal cramping, he also feels joint pain in his knees

and it is difficult to walk.  AR 52.

Medications prescribed include Prednisone (anti-inflammatory), Flagyl (antibiotic),

Vicodin (pain), Levaquin (high cholesterol), Xanax (anxiety), Asacol (ulcerative colitis), and iron

sulfate tablets (anemia).  AR 49.  Currently Plaintiff takes two Vicodin a day to treat his pain.

AR 49-50.  He feels the pain in his lower abdomen.  AR 50.  Plaintiff also takes two Xanax per

day to treat his anxiety.  AR 51.

When asked why he had not had the surgery recommended by his doctors, Plaintiff

indicated that he hoped "they will come up with something without having to remove my entire

colon," that he understands the surgery is "a pretty serious surgery" and he did not wish to risk

his life. AR 50.  When asked by the ALJ whether one of his doctors had advised him the surgery

was life threatening, Plaintiff replied that the doctors "made is sound pretty drastic and

dangerous," that it would involve "blood everywhere" and that he would have to use "some type

of pouch . . .."  AR 54-55.  Additionally, the surgery may require blood transfusions about which

he is "really nervous" because he does not "want to have somebody else's blood" in him.  AR 55.

The surgery is "risky" and he is "really scared of the operation."  AR 55.

VE Chaparro identified Plaintiff's past relevant work to include: an energy conservation

representative, medium and semi-skilled; car wash attendant, light and unskilled; and cashier,

light and unskilled.  AR 55-58.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 233-459.  The medical

evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the

ALJ determined that Plaintiff did not meet the disability standard.  AR 22-27.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 4, 2007. AR 24. Further, the ALJ identified ulcerative colitis as a severe impairment. AR 24-25. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 25.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, and can walk, stand and sit for six hours in an eight-hour workday. AR 25-26.

Next, the ALJ determined that Plaintiff was capable of performing his past relevant work as a car wash attendant. Further, the ALJ determined that Plaintiff's past work did not require the performance of work related activities precluded by the RFC. AR 26-27. Therefore, the ALJ found Plaintiff was not disabled. AR 27.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

1

**REVIEW**

2      In order to qualify for benefits, a claimant must establish that he is unable to engage in

3  substantial gainful activity due to a medically determinable physical or mental impairment which

4  has lasted or can be expected to last for a continuous period of not less than twelve months. 42

5  U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

6  such severity that he is not only unable to do her previous work, but cannot, considering his age,

7  education, and work experience, engage in any other kind of substantial gainful work which

8  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

9  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

10  Cir. 1990).

11

**DISCUSSION**

12

*The ALJ's Finding Regarding Plaintiff's Refusal to Undergo Surgical Intervention*

13      Plaintiff claims the ALJ erred in determining his credibility because the ALJ improperly

14  faulted Plaintiff for choosing not to undergo a colectomy[4] procedure. More particularly, Plaintiff

15  contends the colectomy was only recommended rather than prescribed, as required. Additionally,

16  Plaintiff argues that his reasons for declining surgery were sufficient. As a result, Plaintiff

17  contends he is entitled to an award of benefits. (Doc. 13 at 5-13.) The Commissioner contends

18  the ALJ did not err. More specifically, the Commissioner asserts the surgery was prescribed

19  rather than recommended, and that Plaintiff's reasons for failing to follow the prescribed

20  treatment were not acceptable pursuant to the applicable regulation. (Doc. 17 at 6-13.)

21      **A.**    *Legal Standards Pertaining to Credibility*

22      A two step analysis applies at the administrative level when considering a claimant's

23  subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

24  claimant must produce objective medical evidence of an impairment that could reasonably be

25  expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the

26  claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

27

28      [4]A colectomy or large bowel resection is a surgery to remove all or part of the large bowel.
Http://ww.nlm.nih.gov/medlineplus/ency/article/002941.htm.

claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), internal quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635, citation omitted.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*., citing *Magallanes v. Bowen*, 881 F.2d at 755. The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

1

## B.    *ALJ Larsen's Credibility Findings*

2      ALJ Larsen made the following findings in this case:

3          After carefully considering the evidence, I find Mr. Maxwell's medically-
       determinable impairments can reasonably be expected to produce his alleged
4      symptoms, but his statements about the intensity, persistence, and limiting effects
       of those symptoms are not credible to the extent they are inconsistent with my
5      assessment of his residual functional capacity.
           Mr. Maxwell has failed to follow prescribed treatment under 20 CFR §
6      404.1530 and 416.930.  Under those regulations, a claimant "must follow
       treatment prescribed by his or her physician if this treatment can restore [the
7      claimant's] ability to work."  Mr. Maxwell has ulcerative colitis.  He credibly
       testified he has episodes of sudden-onset diarrhea ten to fifteen times a day. About
8      twice a week, he cannot make it to the toilet in time and soils himself.
       Additionally, he has severe abdominal cramps three to four times a day, lasting
9      from 30 minutes to two hours each.  He takes Vicodin for the pain.  During the
       cramps, he cannot concentrate on anything else and cannot function.  By his own
10     estimate, he lies down 22 hours per day.  He feels fatigued all the time.
           The state agency doctors stated they saw in the record some improvement
11     in Mr. Maxwell's condition and concluded he can perform light work.  The
       medical record generally supports the testimony and allegations of Mr. Maxwell
12     and the observations of his mother . . . (although Mr. Maxwell is most persuasive
       on his own behalf).
13         However, Mr. Maxwell's doctors have recommended surgery - a
       colostomy[5], essentially - and Mr. Maxwell has declined this treatment.  At the
14     hearing, Mr. Goldberg asked him why he wouldn't have it, and he said he didn't
       want to "risk his life" and preferred to wait for medical science to develop a less-
15     invasive treatment.  I specifically asked Mr. Maxwell if any of his doctors had told
       him the surgery was life-threatening, and he said no, they hadn't but they had told
16     him there would be blood everywhere, and his intestine would likely be diverted
       into a pouch he would have to wear externally.  He also said he didn't want to
17     have a blood transfusion because he did not want someone else's blood in him.
       Mr. Maxwell did not say 1) the surgery offends his religious beliefs; 2) that he has
18     submitted to this surgery previously, and it didn't work; 3) the surgery is for some
       reason particularly dangerous to him, as opposed to most other patients; or 4) the
19     surgery requires amputation of an extremity, or a major part of an extremity.  The
       surgery is not very risky in relation in [*sic*] to the severity of Mr. Maxwell's
20     current symptoms and the surgery is reasonably likely to restore his ability to
       work, that is, at least to reduce his symptoms to a point at which, at his young age
21     (34 years old on the day of the hearing), he could last through an 8-hour day, even
       if with some accommodation.

22
   AR 26, emphasis added & internal citations omitted.
23

24

25

26         [5]A colostomy is a surgical procedure that brings one end of the large intestine out through the abdominal
   wall. Stools moving through the intestine drain into a bag attached to the abdomen.
27     http://www.nlm.nih.gov/medlineplus/ency/article/002942.htm.  A colectomy and colostomy are not one in the same.
   A colectomy, rather than a colostomy, was the recommended procedure.
28

**C.** *Analysis*

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, as noted above, the ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce his alleged symptoms. AR 26. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

With regard to the second step, ALJ Larsen found the medical evidence supported Plaintiff's testimony and allegations, yet because Plaintiff declined to undergo surgery, and because he did not offer a sufficient reason for that refusal, the ALJ found him to be not disabled. AR 26-27. This Court finds the ALJ erred.

Title 20 of the Code of Federal Regulations section 404.1530 provides as follows:

(a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.

(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

(c) Acceptable reasons for failure to follow prescribed treatment. We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failure to follow prescribed treatment. The following are examples of a good reason for not following treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.

(2) The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

(4) The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5) The treatment involves amputation of an extremity, or a major part of an extremity.

1              **1.     Prescribed or Recommended**

2          Plaintiff contends his physicians did not prescribe a colectomy, rather, it was a

3    recommended course of treatment.  The Commissioner asserts the treatment was in fact

4    prescribed.  A review of the medical record reveals that Plaintiff's position is accurate.

5          Following Plaintiff's three week hospitalization in June and July of 2007, his treating

6    physician Kevin T. Kodama *recommended* a colectomy: AR 275 (8/9/07 "I do believe it is

7    reasonable to consider surgical treatment, which would be in this case a total colectomy most

8    likely with later plans for a possible revision to a J-pouch if it appears as though he does have

9    ulcerative colitis"); AR 274 (8/17/07 "He clearly has proven to be a non responder to steroids

10   and therefore, I think surgery is also a very reasonable way to address this problem in which case

11   I would *recommend* a subtotal colectomy"); AR 316, 324-325 (8/9/08 "will need surgery").

12   Clovis Community Medical Center records reveal discussion with Plaintiff about his surgical

13   "option."  *See* AR 288.  There is no reference to the colectomy procedure having been prescribed.

14   Further, Fresno Medical Center, Inc. records do not make reference to a colectomy having been

15   prescribed.

16         Interestingly, ALJ Larsen himself used the accurate term - recommended - in the first

17   sentence of paragraph five of his findings ("Mr. Maxwell's doctors have *recommended* surgery").

18   AR 26.  Furthermore, none of the citations to the record referenced by the ALJ - Exhibits 3E, 5F

19   and 6F - refer to a prescribed colectomy procedure.  *See* AR 180-187, 289-199, 300-301.

20         Despite the Commissioner's assertion to the contrary, a recommendation regarding

21   surgery and notations about a likely future need for surgery do not amount to a prescription.

22   "A failure to follow treatment results in a denial of benefits only if the treatment is 'prescribed.'

23   Treatment that is merely recommended or suggested need not be followed."  Frank S. Bloch,

24   Bloch on Social Security § 3.43 (May 2011).

25         In *Aguirre v. Astrue*, 2009 WL 3346741 *5 (C.D. Cal. Oct. 14, 2009), the Eastern

26   Division of the United States District Court for the Central District of California considered this

27   same question:

28

1    The ALJ's assertion that plaintiff declined surgery was also inadequate to
2  undermine plaintiff's credibility.  Failure to follow a prescribed treatment that
   would ameliorate an impairment, without good reason, is a valid basis for denying
3  benefits.  20 C.F.R. §§ 404.1530(b), 416.930(b).  The ALJ found that plaintiff
   "declined recommended surgery, saying she was afraid she would get worse,
4  which is not a valid reason for declining such treatment since it is not unduly
   dangerous and there is no indication of any medical contraindications." []  First,
5  the ALJ's determination was erroneous because it is improper to deny benefits on
   the basis of declined surgery, when surgery is only *suggested* rather than a
6  *prescribed* course of treatment.  *See Teter v. Heckler*, 775 F.2d 1104, 1107 (10th
   Cir. 1985) (a claimant's refusal to undergo surgical treatment is not a sufficient
7  reason to deny benefits where surgery was at most recommended or suggested but
   not prescribed by a physician); *see also Young v. Califano*, 633 F.2d 469, 472-73
8  (6th Cir. 1980) (unwillingness to undergo a suggested surgery does not constitute
   failure to follow prescribed treatment); 20 C.F.R. §§ 404.1530(a)-(b), 416.930(a)-
9  (b) ("In order to get benefits, you must follow treatment prescribed by your
   physician . . . [and] [i]f you do not follow the prescribed treatment without good
10 reason, we will not find you disabled" (emphasis added).  In this case, although
   plaintiff's testimony reflects that her doctors may have suggested the possibility of
11 surgery, the medical evidence does not indicate that surgery was ever prescribed.
   "That various physicians suggested [an] operation does not necessarily mean that
12 they prescribed it."  *Schena v. Health & Human Services*, 635 F.2d 15, 19 (1st Cir.
   1980).

13 (Emphasis in original.)

14      Like the plaintiff in *Aguirre*, Plaintiff's physician only recommended or suggested

15 surgery; a colectomy was *not* prescribed.  *See also Garcia v. Astrue,* 2012 WL 3217851 (C.D.

16 Cal. Aug. 7, 2012) *9 ("the Court is not aware of any evidence that any of plaintiff's doctors

17 *prescribed* spinal surgery as treatment for her neck and back pain," citing to *Aguirre and Teter*).

18 Therefore, the ALJ's finding in this regard is not supported by substantial evidence and is not

19 free of legal error.

20              **2.      Acceptable Reasons for Declining Surgery**

21      Even had the ALJ not erred as found above, this Court finds that Plaintiff's reasons for

22 declining to undergo a colectomy are acceptable and reasonable.

23      First, it is notable that the applicable regulation provides "*examples* of a good reason for

24 not following treatment."  (20 C.F.R. § 4041530(c), emphasis added.)  Those examples are by no

25 means an exhaustive list of good reasons to forego treatment.  Nevertheless, ALJ Larsen's

26 findings cited to these examples in a manner suggestive of a belief that only those reasons are

27 permissible.

28

                                        10

Second, it appears significant to this Court that neither party cited to any factually similar case wherein an ALJ's decision to deny disability benefits was based upon the claimant's refusal to undergo a surgery that would require the removal of his large bowel. While such a surgery may indeed "restore [a claimant's] ability to work," requiring such a life altering surgery, and its attendant physical and mental side effects, is improper. This Court believes it very likely that factually similar cases result in an award of benefits.

At the administrative hearing, Plaintiff testified as follows:

> Q . . . Why haven't you had the surgery that has been recommended?
> A I'm pretty much, you know, I'm hoping they will come up with something without having to remove my entire colon, and from what I've heard about it, you know, I'm not too, you know, it's a pretty serious surgery, and I really don't want to risk my life, you know, for - -
> Q I understand.
> A - - going through the surgery.

AR 50. Later, during examination by ALJ Larsen, the following colloquy occurred:

> Q Mr. Maxwell, did one of your doctors tell you the surgery was life threatening?
> A They made it sound pretty drastic and dangerous. It was like through a process, and they said there was like blood everywhere and, you know, there is going to be blood everywhere, and there might be like a pouch and like I wouldn't be able to use it right, you know. I might have to use like some type of pouch or something out of my side or something, you know.
> Q Sure. A colostomy.
> A and then - - yeah.
> Q Yes.
> A It's like a (INAUDIBLE), and then I may have to have like blood transfusions, which I'm really nervous, you know, and I really didn't want to have somebody else's blood put in me, you know.
> Q Okay.
> A And it could be risky, you know.
> Q Okay. All right.
> A So I'm really scared of the operation, you know. So - -

AR 54-55. Plaintiff had several reasons for declining to proceed with surgery: (1) he was hoping medical advances would mean he did not have to have his entire colon removed; (2) he believed the surgery presented a risk; (3) he was afraid to undergo the surgery; and (4) he did not wish to receive a blood transfusion if it were required. ALJ's Larsen's findings are not accurate because he cites only to the risk and a preference to "wait for medical science." AR 26. Moreover, the ALJ's findings record that when asked whether any of his physicians had advised Plaintiff the surgery was life threatening, Plaintiff "said no, they hadn't." This too is inaccurate as Plaintiff

1  did not respond with a "no," rather he said the doctors "made it sound pretty drastic and

2  dangerous."  AR 26.

3       In *Nichols v. Califano*, 556 F.2d 931 (9th Cir. 1977), the fifty-three year old claimant

4  refused to undergo a surgery to correct urinary incontinence where two previous surgeries to

5  correct the problem were unsuccessful.  *Id.* at 932.  The Commissioner found that her willful

6  failure to submit to surgery precluded a finding of disability pursuant to the regulations.[6]  *Id.* at

7  933.  The Ninth Circuit held however that Nichols' refusal was justified:

8           A claimant under a disability need not submit to all treatment, no matter
         how painful, dangerous, or uncertain of success, merely because one physician
9        believes that a remedy may be effective.  In determining whether a claimant's
         refusal to undergo treatment is reasonable, i.e., supported by justifiable cause . . .
10       several factors must be considered.  The physician's outlook as to the success of
         the treatment . . .. [¶] The nature of the treatment or surgery required is also
11       significant.  A patient may be acting reasonably in refusing surgery that is painful
         or dangerous.  Thus, a patient's reasonable fear has been held to justify refusal of
12       treatment.  By contrast, where a prescribed medical procedure is simple, the
         claimant's behavior may be subject to closer scrutiny. [¶] The agency should also
13       examine the severity of the claimant's ailment.  The more debilitating the
         impairment, the less reasonable is the refusal of treatment especially where the
14       corrective procedure is simple. [¶] Finally, a claimant's age, background, and
         medical history should be considered in determining whether he has justifiable
15       cause to refuse treatment.

16  *Nichols v. Califano*, 556 F.2d at 933.

17       Applying the *Nichols* factors here, this Court will not find that Plaintiff's failure to submit

18  to a total colectomy was unreasonable.  The potentially serious risks associated with a colectomy

19  include: bleeding; blood clots in legs (deep vein thrombosis) and the lungs (pulmonary

20  embolism); breathing problems; heart attack or stroke; infection; injury to organs near colon,

21  such as bladder and small intestines; and tears in the sutures that reconnect the remainder of the

22  digestive system.  The surgery typically involves a hospital stay of several days to a week on

23  average.  *See* http://www.mayoclinic.com/health/colectomy/MY00141/DSECTION=risks ;

24  http://www.nlm.nih.gov/medlineplus/ency/article/002941.htm.  The ALJ's statement that the

25  "surgery is not very risky in relation to the severity of [his] current symptoms" (AR 26) is not

26

27

28      [6]At that time, the same regulation was found at 20 C.F.R. § 404.1507.

well taken.[7]  Further, viewed in light of the aforementioned risks, Plaintiff's fear and apprehension are understandable.  In electing to continue to receive and take prescription medication to treat his condition, Plaintiff has otherwise followed the *prescribed* course of treatment suggested by his physicians.

In *Cassiday v. Schweiker*, 663 F.2d 745 (7th Cir. 1981), plaintiff suffered from moderate to severe bilateral thoracic outlet syndrome.  Following a referral by her treating physician, a neurologist recommended surgical removal of four ribs, two on either side of her heart.  Several other experts either concurred in the recommendation or believed she was capable of some work.  *Id*. at 747.  When the ALJ barred plaintiff from continuing to receive disability benefits because she refused to undergo surgery to cure or ameliorate her condition, plaintiff appealed.  *Id.* at 746.  The Seventh Circuit considered the regulation at issue - now section 404.1530 cited above - and determined that the ALJ erred.  It noted that the surgery must be "'prescribed,' [and that] recommendations, suggestions, and abstract opinions are not enough."  *Id*. at 749; *see also Teter v. Heckler*, 775 F.2d at 1107.  Further, the court was troubled by the ALJ's treatment of the issue in light of the plaintiff's testimony that her physician told her that often patients are worse for having had ribs removed around their heart, and that the condition "would just be worse."  The ALJ concluded that "'a reasonable individual would have accepted the recommendation of the specialist for surgery, or would have sought an additional opinion rather than relying on the contrary opinion of a less qualified general practitioner."  *Cassiday v. Schweiker*, 663 F.2d at 750.  The *Cassiday* court noted that its finding that the plaintiff was not required to undergo surgery was in accord with several other courts.  *Id.* at 750, n.7.

Like the *Cassiday* court, this Court is troubled by the ALJ's treatment of this issue.  His own findings reference the surgery as recommended rather than prescribed, he confused a colostomy with a colectomy, and he considered Plaintiff's proffered reasons for declining surgery too narrowly.  All are error.

---

[7]See n.5, *ante* (ALJ's reference to colostomy procedure is inaccurate).

This Court is persuaded by the following excerpt:

> Finally, we note that the Social Security Act was intended "to ameliorate some of the rigors that life imposes." *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965). It was a commitment by the nation to serve the individual needs of its people. The perfunctory determination of the Secretary here, the apparent disregard for the concerns that moved [plaintiff] to reject back surgery are at odds with the underlying premises of the Act.

*Schena v. Secretary of Health and Human Services*, 635 F.2d at 20. Here then, requiring Plaintiff to undergo a total colectomy - removal of a digestive organ - is at odds with the underlying premises of the Social Security Act.

In sum, ALJ Larsen's credibility findings are not supported by substantial evidence nor are they free of legal error.

### *Remand for an Award of Benefits*

The decision whether to remand a matter pursuant to sentence four of Title 42 of the United States Code section 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d at 1292. In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed. *Varney v. Sec'y of Heath & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited," the testimony could be credited as true, and remand is not appropriate. *Lester v. Chater*, 81 F.3d

1    821, 834 (9th Cir.1996); *Smolen*, 80 F.3d at 1292.  Notwithstanding, courts retain flexibility in

2    crediting testimony as true.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

3         Here, the ALJ failed to properly reject Plaintiff's credibility using the proper legal

4    standards.  Further, it is clear that Plaintiff would be disabled if his testimony were credited as

5    true.  And in fact, but for his improper reliance upon Title 20 of the Code of Federal Regulations

6    section 404.1530, the ALJ found Plaintiff otherwise credible.  *See* AR 26.  Based upon Plaintiff's

7    complaints, and as expressly noted by the ALJ, Plaintiff's ulcerative colitis causes sudden onset

8    diarrhea ten to fifteen times a day.  Additionally, about twice a week, Plaintiff is unable to make

9    it to the toilet in time and thus soils himself.  The associated severe abdominal cramping caused

10   by his condition occurs three to four times a day, each of thirty minutes to two hours in duration.

11   The abdominal cramping then causes fatigue.  Plaintiff testified he lies down for twenty-two

12   hours a day.  *Cf.* AR 26 to AR 47-50, 52-54.

13        Further, in *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004), the Ninth Circuit

14   emphasized that "[a]llowing the Commissioner to decide the issue again would create an unfair

15   'heads we win; tails, let's play again' system of disability benefits adjudication," and unfairly

16   "delay much needed income for claimants who are unable to work and are entitled to benefits."

17   *Id.* at 595.  Moreover, in *Moisa v. Barnhart*, after finding that reversal was justified due to the

18   ALJ's commission of clear error in rejecting the claimant's pain testimony, the Ninth Circuit

19   concluded that a remand for an award of benefits, rather than for further proceedings on the

20   credibility issue, was appropriate.  *Moisa*, 367 F.3d at 887.  The Ninth Circuit reasoned that

21   "[t]he Commissioner, having lost this appeal, should not have another opportunity to show that

22   [plaintiff] is not credible any more than [plaintiff], had he lost, should have an opportunity for

23   remand and further proceedings to establish his credibility."  *Id.*  Just as in *Moisa*, this case turns

24   entirely on the credibility of the Plaintiff's subjective pain testimony.  ALJ Larsen found Plaintiff

25   to be credible but for Plaintiff's refusal to undergo a colectomy procedure.  Because this Court

26   has determined the ALJ's finding in that regard is erroneous, remand for an award of benefits is

27   appropriate.

28

1

## CONCLUSION

2          Based on the foregoing, the Court finds that the ALJ's decision is not supported by

3   substantial evidence in the record as a whole and is not based on proper legal standards.

4   Accordingly, this case is REMANDED to the Commissioner of Social Security for a calculation

5   of benefits only.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff

6   Steven L. Maxwell and against Defendant Michael J. Astrue, Commissioner of Social Security.

7

8   IT IS SO ORDERED.

9   **Dated:    September 11, 2012             /s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28